UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| In the Matter of:<br>CURTIS M. BYRUM, II<br>VALERIE C. BYRUM<br>Debtors | CASE NO.: 14-04470-5-SWH<br><br>CHAPTER 12 |

## AMENDED CHAPTER 12 PLAN OF REORGANIZATION

The Debtors propose the following Amended Chapter 12 Plan (the "Plan") for the adjustment of their debts. It has been revised to attempt to address creditor's objections and contains provisions added since the confirmation hearing held February 24, 2015.

### ARTICLE I
### Summary of the Plan

This Plan shall continue for a period of five (5) years from its effective date. The property of the Debtors is being valued, and the claim of each secured creditor is being treated as secured in the amount of the value of the property securing such claim. Cost of administration is being paid on the effective date of the Plan unless otherwise agreed to or directed by the Court. Priority claims are being paid in full as allowed. The Debtors will pay to the Trustee no less than their disposable income over the term of the Plan for Trustee administration and distribution to unsecured creditors. The deficiency claims of all secured creditors will be treated as unsecured claims unless otherwise ordered by the Court.

### ARTICLE II
### Definitions

1. "Creditors" means all entities having a claim against the Debtors.

2. "Secured Creditor" means a creditor with lien or security interest in property of the Debtors.

3. "Claim" means a timely filed claim which has been allowed by the Court or a secured claim which is dealt with in the Plan whether or not a claim is filed.

4. "Effective Date" means the date on which the Order of Confirmation becomes final and non-appealable.

5. "Trustee" means the Chapter 12 Trustee.

6. "Disposable Income" means all income received by the Debtors annually after deducting operating expenses, living expenses, and Plan payments.

## ARTICLE III
## Property Valuations and Liquidation

Pursuant to Section 1225(a)(4) The Debtors propose to value their property as set out in Exhibit A attached hereto. This value reflects the amount that would be available to pay claims if the Debtors' property was liquidated under Chapter 7, and may be at variance with appraised values for an operating poultry facility (see Article VII, Class VI.) The Debtors will sell equipment to Curtis Byrum, Sr. and abandon other equipment as set out in Exhibit B.

## ARTICLE IV
## Liquidation Test

In a hypothetical liquidation the Debtors' assert that the net equity in their property, after deducting secured claims and exemptions is $0.00 No less than the Debtors' disposable income shall be paid to the Trustee for payment of administrative costs and distribution to unsecured creditors over the life of the plan. (See Exhibit "A").

## ARTICLE V
## Disposable Income

For the term of this plan, all of the Debtors' disposable income, regardless of the amount, will be paid to the Trustee for payment of cost of administration and distribution to creditors (see Exhibits "B" and "C").

## ARTICLE VI
## Living Expenses

The Debtors' living expenses are based on a monthly budget of $5,831.00. However, the living allowance of the Debtors may be periodically increased or decreased upon application by the Debtors and approval of the Court without further notice to creditors if such modification does not increase their living allowance by more than One Thousand Dollars ($1,000.00). See Exhibit D for an itemization of living expenses.

## ARTICLE VII
## Classification and Treatment of Claims

1. <u>Class I.</u>  Costs of Administration. This class includes compensation and expenses of professionals and Court costs and all expenses incurred by the Debtors after the filing of their Petition and before the entry of the Order of confirmation. All cost of administration claims, except compensation and expenses of professionals and Court costs, shall be paid in full on the effective date of the Plan. Claims for compensation and expenses of professionals and Court costs shall be paid upon approval by the Court and as directed by the Court. Compensation and expenses of professionals shall be paid pursuant to 11 U.S.C. Section 503(b) and Section 330.

2. <u>Class II.</u>  Priority Claims. Included in this class are the Claims of the Internal Revenue Service ("IRS") and the Chowan County Tax Collector ("Chowan County"). The IRS has filed a claim in the amount of $60,575.22, which includes an estimate for amounts due for tax year 2013. The Debtors are finalizing the 2013 return and the actual tax due will be $12,384.00 which is the amount included for feasibility analysis. The IRS will be paid over the five year period of the plan in quarterly installments with interest at 5.25%. The payment will be $721.37 and the first installment will be due at the end of the first full quarter following entry of the order confirming the plan.

The claim of Chowan County in the amount of $10,139.02 will be paid over the five year period of the plan in quarterly installments with interest at 5.25%. The amount of the payment will be $590.60 and the first installment will be due at the end of the first full quarter following entry of the order confirming plan.

3. <u>Class III.</u>  Secured Claim of USDA Farm Service Agency ("FSA"). FSA holds a claim in the approximate amount of $225,989.58 according to its proof of claim. The claim is secured by real estate, farm machinery and equipment although there is insufficient equity in the Debtors' property to support a fully secured claim.

FSA holds a third lien deed of trust on the Debtors' residence which the Debtors value at $167,000.00 according to a recent appraisal. Based on the prior liens to Citi Mortgage and Citibank totaling $194,166.00 this portion of the claim will be treated as unsecured.

FSA also claims a lien on farm land and equipment although its lien position relative to other claimants leaves it unsecured except for a Great Plains Grain Drill, which the Debtors will abandon for liquidation by FSA.

FSA asserts a claim secured by a tractor which was traded for other equipment, purportedly subject to FSA's lien, but without its permission. The Debtors agree that FSA shall have a non-dischargeable claim in the amount of $61,700.00 to be evidenced by a separate order.

The claim will be paid after the conclusion of the plan term as mutually agreed by

the Debtors and FSA and will be treated as a Class X unsecured claim for plan purposes.

4. <u>Class IV.</u>  Secured Claim of CNH Industrial Capital America, LLC ("CNH"). CNH has a claim of $109,479.83 according to its Proof of Claim filed herein. CNH holds a first lien on the Debtors' Case IH Maxuum Tractor, model 140 and Case IH Loader, Model L755. The Debtors value the collateral at $82,500.00 and CNH values the collateral at $107,033.00 which amount mandates a payment well beyond the Debtors' cash flow capacity. The collateral will be abandoned and this claim will be afforded treatment as a Class X unsecured claim for any deficiency balance after the collateral is liquidated.

5. <u>Class V.</u>  Secured Claim of AgCarolina Farm Credit, ACA ("AgCarolina"). AgCarolina holds three claims as evidenced by their Proof of Claims filed herein secured by real estate, farm machinery and equipment. For Plan purposes this claim will be treated as three separate obligations.

   For its first claim, AgCarolina will be treated as having a claim fully secured by a first priority lien on the Retained Equipment identified in Exhibit B, which Equipment has a collective value of $55,662. This secured claim shall be paid over five years with interest at 5.25% in monthly installments of $1,057.02, with the first installment being due at the end of the first full month following entry of the order confirming the plan.

   The second claim which is secured by the Debtors real property is subject to the first lien of American Farm Mortgage and there is insufficient equity to provide for a secured payment on this claim. This portion of Ag Carolina's claim will be treated as a Class X unsecured claim.

   All remaining collateral of AgCarolina not otherwise addressed by the Plan will be abandoned for liquidation in a commercially reasonable manner and any deficiency remaining will be treated as a Class XI, unsecured claim.

6. <u>Class VI.</u> Secured Claim of American Farm Mortgage ("AFM"). AFM holds a secured claim of totaling $1,079,862.13 according to the three proofs of claim filed herein and asserts the Debtors' real property securing its debt has a value of $1,345,000 as an operating poultry facility. As of March 1, 2015 the balance of all notes was $1,087,155.99. It will be treated for plan purposes as fully secured by the Debtors' land and poultry operation. This claim will be unimpaired and paid in accordance with the Debtors' existing agreement with AFM except to the extent of any voluntary modifications of the arrangement, not affecting other creditors to this proceeding, are agreed upon. The payment arrangements are as follows:

| Note: 87210 | $ 7,293.82 | Semi Annually |
| Note: 87320 | $19,476.03 | Semi Annually |
| Note: 87330 | $14,116.23 | Semi Annually |

$40,886.08 or $81,772.16 Annually

Note 87210 has matured according to its terms and will be termed out over fifteen years. It will bear interest at AFM's 5 year COFI rate plus 2% which is currently 4.86%. The rate will be fixed for 5 years at a time and then will adjust at the end of each five year period to the then current COFI rate plus 2%. The final maturity date is estimated to be October 1, 2029. The Debtors will execute an allonge to Note 87210 memorializing these changes.

7. <u>Class VII</u>. Secured Claim of Agricredit Acceptance, LLC ("Agricredit"). Agricedit holds a $10,281.40 claim secured by a hay bailer and rake. The collateral securing this claim will be abandoned for liquidation in a commercially reasonable manner and any surplus funds will be paid to the Chapter 12 Trustee for distribution to creditors and any deficiency will be treated as a Class X unsecured claim.

8. <u>Class VIII.</u> Secured Claim of CitiMortgage. Citimortgage is secured by a deed of trust which is a first lien on the Debtors' home and contiguous land. The claim is fully secured and will be paid the regular monthly installments beginning the first full month following confirmation of the Plan. The arrearage of $8,462.31 existing as of the confirmation of the Plan will be paid in quarterly installments beginning at the end of the first full quarter following entry of the order confirming the plan, over the five year term of the plan with interest of 5.375. The payment amount will be $485.40.

9. <u>Class IX</u>. Secured Claim of Citibank. Citibank is secured by a deed of trust which is a second lien on the Debtors' home and contiguous land. The claim is fully secured and will be paid the regular monthly installments beginning the first full month following confirmation of the Plan. The arrearage existing as of the confirmation of the Plan will be paid in quarterly installments beginning at the end of the first full quarter following entry of the order confirming the plan. The payment amount will be $125.38.

10. <u>Class X</u>  Unsecured Claims. The unsecured claims of the Debtors as filed shall be paid by the Debtors disposable income for the duration of their Plan.

11. <u>Class XI</u> claim of John Deere financial F.S.B. ("Deere"). Deere asserts a secured claim by virtue of a judgment entered December 17, 2013 for $119,865.40 and attorney's fees of $18,251.52. Based on the value of The Debtor's real property to which the judgment has attached there is no equity available to support a secured claim and this claim will be treated as a Class X unsecured claim.

## ARTICLE VIII
### Execution of Plan

The Debtors propose to make the Plan payments out of future income consisting of post-petition earnings from their poultry operation and rental income from retained farmland pursuant to 11 U.S.C. Sec. 1207 for the period of the Plan in dealing with unsecured creditors.

## ARTICLE IX
### Modification to Plan after Confirmation

The Debtors may request the Court to further modify this Plan before or after confirmation in accordance with the provisions of 11 U.S.C. Section 1222 and Section 1229.

## ARTICLE X
### Retention of Liens

All creditors whose claims are treated as secured in this Plan shall retain their liens on the collateral securing their respective claims until such claims are paid in full in the amount allowed as secured. All terms of the loan documents supporting the secured claims, including without limitation any due-on-sale clause, will remain valid and enforceable unless expressly modified herein.

## ARTICLE XI
### Sales Free of Interest

The Debtors may, during the term of this Plan, sell property free and clear of interest as provided in 11 U.S.C. Section 1206 at public auction or private sale after notice to creditors required by 11 U.S.C. Section 363 and the interest shall attach to the proceeds of the sale.

## ARTICLE XII
## Automatic Stay

Notwithstanding the entry of an Order confirming this Plan, the automatic stay provided by 11 U.S.C. Section 362 shall continue in effect as to all property retained by the Debtors until the Plan has been completed, terminated, the discharge entered, an Order entered lifting the stay, or the case is dismissed pursuant to 11 U.S.C. Section 1208, whichever is earlier. The automatic stay shall not apply to future crops or property given as collateral for post-confirmation operating loans.

## ARTICLE XIII
## Default

In the event the Debtors should fail to comply with any provision of the Plan, Modification, Order Confirming the Plan, or modification thereof, and said failure continues for a period of thirty (30) days, then without further notice or hearing the automatic stay will be lifted. Should the automatic stay be lifted as provided herein, and/or upon completion of the Plan and entry of the Debtors' discharge creditors' remedies upon default shall be controlled by the provisions contained in the affected creditor's loan documents.

## ARTICLE XIV
## General Provisions

1. Except as provided in the Plan, the Order confirming the Plan vests all property of the estate in the Debtors free and clear of all liens and encumbrances.

2. The Court shall retain jurisdiction over the Debtors and their property for the term of the Plan.

3. The secured debt of any secured creditor may be further modified by agreement between the Debtors and the secured creditor without Court approval, or upon application of the Debtors and approval by the Court for cause after notice to the subject secured creditor and a hearing, in compliance with 11 U.S.C. Section 1229.

4. The debts adjusted by this Plan may be further modified by agreement between the Debtors and the creditors herein without Court approval, or they may be modified upon application of the Debtors and approval of the Court for cause after notice to the said creditor and a hearing on same.

## ARTICLE XV
## Discharge

Upon the Debtors' compliance with the provisions of the Plan for the term of the Plan, the Court shall enter a discharge which discharges the Debtors from all claims provided for in the Plan except as provided in 11 U.S.C. Sections 1222(b)(5) and (9) and 11 U.S.C. Section 523(a). The Debtors' compliance with the plan and entry of the Debtors' discharge shall also have the effect of extinguishing any judgment liens on the Debtors' property except to the extent different treatment is otherwise specifically provided for such liens in the Debtors' plan.

Respectfully submitted, this 4th day of March, 2015.

/s/RICHARD C. POOLE
Richard C. Poole
Attorney at Law
1510 E. Arlington Blvd., Suite B
Greenville, NC 27858
(252) 353-4455